# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

HERMÈS INTERNATIONAL and
HERMÈS OF PARIS, INC.,

      Plaintiffs-Appellees,

v.

MASON ROTHSCHILD,

      Defendant-Appellant.

Case No. 23-1081

### DEFENDANT-APPELLANT'S OPPOSITION TO
### MOTION FOR LEAVE TO FILE AMICUS BRIEF BY
### THE CHAMBER OF DIGITAL COMMERCE

Pursuant to Rules 27 and 29 of the Federal Rules of Appellate Procedure and Local Rule 27.1 of this Court, defendant-appellant Mason Rothschild respectfully submits this opposition to the Motion by the Chamber of Digital Commerce for Leave to File Amicus Brief.[1]

The brief of proposed amicus The Chamber of Digital Commerce (the "Chamber") should be rejected by the Court because (i) the Chamber's brief is premised on material misstatements of the facts in the record, as well as internal

---

[1] Rothschild is mindful that the Court regularly accepts amicus curiae briefs, and Rothschild consented to the filing of proposed briefs in support of plaintiffs-appellees Hermès International and Hermès of Paris, Inc. ("Hermès") by other industry groups and Starbucks Corporation.

contradictions, and (ii) the Chamber appears to have had improper, substantial contacts with Rothschild and his counsel through the Chamber's advisory board member and current or former chairman prior to and during the Chamber's drafting of its brief.

## I. The Chamber's Brief is Premised on Material Misstatements of the Record and Internal Contradictions.

Although courts "welcome amicus curiae briefs that are helpful, misstatements of facts are not helpful." *Ash v. Tyson Foods, Inc.*, 664 F.3d 883, 896 n.9 (11th Cir. 2011). Like the amicus brief spurned by the court in *Ash*, the Chamber's proposed amicus brief "recount[s] the facts incorrectly when discussing the evidence at the…trial" below, in addition to advancing internally inconsistent factual assertions, and thus should be rejected by this Court. *Id*.

### A. The Chamber's Mischaracterization of *MetaBirkins*.

First, the Chamber's brief is founded on incorrect, material factual assertions that the *MetaBirkins* NFT artworks at issue in this case are "a collection of digital Birkin handbags designed for use and display in the Metaverse," Brief at 2, and that Rothschild "sold his MetaBirkins with the statement that the digital goods were 'Metaverse ready.'" Brief at 4.

In fact, Hermès' own NFT expert was obliged to admit at trial that the *MetaBirkins* are "flat, two-dimensional digital pictures" that "are not virtual

wearables in the sense that some fashion companies are putting out virtual wearables in virtual worlds" and "are not useable as handbags in the sense that 3D digital objects are usable in certain digital environments…" Affirmation of Rhett O. Millsaps II in Opposition to Motion by the Chamber of Digital Commerce for Leave to File Amicus Brief dated February 20, 2024 ("Millsaps Aff."), ¶ 2, Ex. 1 at 137:6-16; *see also id*. at 197:22-198:2. This has been clear since Hermès first sued Rothschild; as the district court correctly noted in its opinion denying Rothschild's motion to dismiss but ruling that *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), applied, "while Hermès calls what Rothschild sells 'digital handbags,' they do not dispute that what Rothschild sells are digital images of (faux fur, not leather) Birkin bags, and not virtually wearable Birkin bags." *Hermès Int'l et al. v. Rothschild*, 603 F. Supp. 3d 98, 100 n.1 (S.D.N.Y. 2022) (additionally noting that "an NFT could link to a digital media file that is just an image of a handbag or could link to a different kind of digital media file that is a virtual handbag that can be worn in a virtual world").

Additionally, the Chamber misrepresents the record evidence in stating that Rothschild "sold his MetaBirkins with the statement that the digital goods were 'Metaverse ready,'" Brief at 4, and that Rothschild "stated that the MetaBirkins were designed in 3D to be 'Metaverse Ready' for use in digital worlds." Brief at 11-12. This is not true. The Chamber, citing only one page from the trial transcript

3

for support, has taken part of a statement by Rothschild out of context from a private text message exchange between Rothschild and two of his associates. In the same message exchange, Rothschild explained that the *MetaBirkins* technically could not be integrated into any metaverse environment because the resolution was too low. Millsaps Aff. ¶ 3, Ex. 2; *id*. ¶ 4, Ex. 3 at 443:10-447:14. Rothschild testified extensively at trial about this private message exchange, including in the portion of the trial transcript cited by the Chamber for its incorrect assertion, explaining that the two-dimensional *MetaBirkins* artworks were created using 3D software because it was necessary to render the fur in the way that Rothschild envisioned it for the two-dimensional images. Millsaps Aff. ¶ 4, Ex. 3 at 276:18-277:5, 288:16-289:3, 443:10-447:14.

These are critical misstatements that render the Chamber's brief unhelpful to the Court, as the Chamber seeks to argue that the *MetaBirkins* are "digital goods" that should be subject to the Lanham Act without limitation, rather than expressive works protected by the First Amendment.[2]

---

[2] While no excuse, the Chamber likely was led down this path by Hermès, which similarly mischaracterizes the record on this point in its brief while failing to acknowledge its own expert's testimony that the *MetaBirkins* are two-dimensional images that are not usable in metaverse environments. Hermès Br. at 10. And although Rothschild consented to the filing of an amicus curiae brief by the American Apparel & Footwear Association and other industry groups, that brief likewise is unhelpful to the Court insofar as its arguments revolve around digital goods sold by brands that are usable in metaverse environments.

4

### B. The Chamber's Mischaracterization of Rothschild's Promotion of *MetaBirkins* Prior to Release.

Second, the Chamber incorrectly asserts that Rothschild "sold [the *MetaBirkins* NFTs] without the artwork revealed, indicating the more important aspect of the token was its utilities rather than the aesthetics of the artwork itself." Brief at 12. This is a specious assertion originally made by Hermès and properly rejected by the district court on summary judgment because the undisputed evidence showed it to be untrue. As the district court explained in its summary judgment opinion, the undisputed evidence showed that Rothschild previewed the *MetaBirkins* artworks in advance of their release, and that *MetaBirkins* buyers knew that they would receive one of the 100 previewed artworks when they minted their NFTs. *See Hermès Int'l et al. v. Rothschild*, 654 F. Supp. 3d 268, 277-78 (S.D.N.Y. 2023). Hermès wisely did not repeat its specious argument at trial, as the undisputed evidence confirmed that it was false. *See*, *e.g.*, Millsaps Aff. ¶ 4, Ex. 3 at 279:3-281:6; Millsaps Aff. ¶ 5, Ex. 4.

### C. The Chamber's Mischaracterization of Secondary Marketplaces.

Third, the Chamber seeks to introduce evidence regarding secondary NFT marketplaces, such as OpenSea, that is unsworn, not subject to cross-examination, misleading, and contradicted by the evidence in the record and the face of the Chamber's own brief. In particular, the Chamber provides a purported screenshot of an OpenSea NFT marketplace listing for Chicago Bulls NFTs and states, "The

collection title is the only way consumers on NFT marketplaces would know that the goods in that collection were officially licensed by the Chicago Bulls basketball organization." Brief at 8. The Chamber compares this with a purported screenshot of the *MetaBirkins* listing on OpenSea and states: "Consumers would not see any potential disclaimer on the secondary marketplace, and because the official entity behind an NFT is frequently not listed as the NFT's creator, the collection title is often the only way consumers know where an NFT comes from. Appellant's MetaBirkins digital goods were similarly displayed to consumers." *Id*.

As the OpenSea *MetaBirkins* page screenshot provided by the Chamber shows, in contrast to the Chicago Bulls NFT example, the OpenSea *MetaBirkins* page contained text at the top beginning, "MetaBirkins is a collection of 100 unique NFTs…" *Id*. The Chamber conspicuously does not provide the Court with a screenshot showing the full text that was listed at the top of the page at that time; the full text in fact was the same as the text on the *MetaBirkins* website, which identified Rothschild as the artist who created the *MetaBirkins* NFTs. Affidavit of Mason Rothschild in Opposition to Motion by the Chamber of Digital Commerce for Leave to File Amicus Brief dated February 20, 2024 ("Rothschild Aff."), ¶ 3. Prior to that, in November 2021 the OpenSea *MetaBirkins* page displayed at the top the following text: "MetaBirkins is a collection of 100 unique MetaBirkin NFTs — living on the Ethereum blockchain. Made by Mason Rothschild."

https://web.archive.org/web/20211108202659/https://opensea.io/collection/metabirkins (last visited February 19, 2024); Rothschild Aff. ¶ 2.

### D. The Chamber's Broad Assertion that NFTs Are Always Digital Goods Is Contradicted by the Record Evidence and by the Chamber Itself.

Fourth, the Chamber's assertion that *Rogers* and First Amendment protections should never apply to NFTs because NFTs are always digital goods is belied by the record evidence in this case and by other factual assertions in the Chamber's own brief. *See* Brief at 12-16. The evidence at trial showed what the Chamber also says in its brief: NFTs are snippets of code that have no inherent characteristics, but rather take on the characteristics of whatever they are linked to, such as physical products, event tickets, or digital artworks. In that sense, NFTs are "digital deeds" because they represent ownership of something else. Brief at 6; Millsaps Aff. ¶ 6, Ex. 5 at 81:2-18; *id.* ¶ 2, Ex. 1 at 127:9-22; *Hermès Int'l*, 654 F. Supp. 3d at 278 ("Individuals do not purchase NFTs to own a 'digital deed' divorced from any other asset: they buy them precisely so that they can exclusively own the content associated with the NFT."). In this case, the evidence at trial established that the *MetaBirkins* NFTs are synonymous with the two-dimensional pictures of fanciful, furry Birkin bags to which they are linked. Millsaps Aff. ¶ 6, Ex. 5 at 103:2-104:4; *id.* ¶ 2, Ex. 1 at 126:20-127:4.

## II. The Chamber's Apparent Improper Contact with Rothschild and His Counsel.

The aforementioned misstatements of the record alone warrant rejection of the Chamber's brief as unhelpful to the Court, but Rothschild additionally opposes the Chamber's motion to appear as a "friend of the Court" because the Chamber appears to have had improper, substantial, purportedly confidential contacts with Rothschild and his counsel prior to and during the Chamber's drafting of its brief through an advisory board member, Matthew Roszak—who, as recently as last December, held himself out as the Chamber's chairman and represented that the Chamber was working on a brief in support of Rothschild. Rothschild Aff. ¶¶ 5-6, Ex. 1; Millsaps Aff. ¶ 7.

When Rothschild's counsel raised concerns of an impropriety or conflict based on these communications in response to the Chamber's request for Rothschild's consent to file its brief, the Chamber's response raised more questions than it answered. In particular, the Chamber's representative replied, "I want to make very clear that Matthew Roszak is not an employee of the Chamber, nor co-founder, nor chairman of the Chamber as stated. We have had zero conversations with Matt related to our brief or this case… For the record, it must be categorically stated that Matt has absolutely no association with the Chamber's activities regarding this issue." Millsaps Aff. ¶ 8, Ex. 6 at 2.

8

In fact, Roszak held himself out to Rothschild as the chairman of the Chamber only two months ago, in December 2023, when he also stated in an email to Rothschild that the Chamber was working on a brief in support of Rothschild and appeared to invite Rothschild to participate in the Chamber's "Amicus Brief Workstream." Rothschild Aff. ¶ 6, Ex. 1. Additionally, Roszak has been described in the past as the Chamber's chairman on the Chamber's own website and in videos published by the Chamber, and he currently is described as the Chamber's chairman on the Chamber's MarketsWiki page updated last year, on his own LinkedIn page, and on his TED speaker biography page, among other places on the Internet. Millsaps Aff. ¶¶ 9-14. Moreover, when Rothschild and Roszak last spoke just prior to the filing of amicus briefs supporting Hermès in this case, Roszak indicated to Rothschild that he had believed that the Chamber would support Rothschild but effectively was outvoted on the issue; he also informed Rothschild that Starbucks would be filing an amicus brief in support of Hermès. Rothschild Aff. ¶ 7.

In light of the material misstatements in the Chamber's brief and the questions surrounding Mr. Roszak's purportedly confidential, substantive communications about the case with Rothschild and his counsel, the Court should

deny the Chamber's motion to appear as amicus curiae and reject the Chamber's proposed brief.

Dated: February 20, 2024

                                        Respectfully Submitted,

                                        /s/ *Rhett O. Millsaps II*
                                        Rhett O. Millsaps II
                                        Christopher J. Sprigman
                                        Rebecca Tushnet
                                        Mark A. Lemley
                                        Mark P. McKenna (*admission pending*)
                                        LEX LUMINA PLLC
                                        745 Fifth Avenue, Suite 500
                                        New York, NY 10151
                                        (646) 898-2055

                                        *Attorneys for Defendant-Appellant Mason Rothschild*