# 23-1081-CV

IN THE

## United States Court of Appeals

FOR THE SECOND CIRCUIT



HERMÈS INTERNATIONAL, HERMÈS OF PARIS, INC.,

*Plaintiffs-Appellees,*

*v.*

MASON ROTHSCHILD,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Southern District of New York
(Honorable Jed S. Rakoff)

## REPLY BRIEF FOR DEFENDANT-APPELLANT

Rhett O. Millsaps II
Christopher J. Sprigman
Mark P. McKenna *(admission pending)*
Rebecca Tushnet
Mark A. Lemley
LEX LUMINA PLLC
745 Fifth Avenue, Suite 500
New York, New York 10151
646-898-2055

*Attorneys for Defendant-Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................. iii

INTRODUCTION ............................................................................................. 1

ARGUMENT .................................................................................................. 5

    I.   *ROGERS* REQUIRES REVERSAL AS A MATTER OF LAW ................................................................................................... 5

        A.  *MetaBirkins* Are Artworks ................................................................ 6

        B.  "MetaBirkins" Was Used as a Title, Not a Trademark ........................ 7

        C.  The "MetaBirkins" Title Obviously Is Artistically Relevant ............................................................................................ 11

        D.  Hermès Failed to Allege or Show Any Explicitly Misleading Use ................................................................................ 12

    II.  THE JURY INSTRUCTIONS WERE ERROR REQUIRING REVERSAL ......................................................................................... 14

    III.  THE DISTRICT COURT ERRED IN REJECTING ROTHSCHILD'S MOTION FOR JUDGMENT AS A MATTER OF LAW ................................................................................................. 19

    IV.  EVEN IF *ROGERS* DID NOT APPLY, THE DISTRICT COURT'S ERRORS OF LAW REQUIRE REVERSAL AND REMAND FOR A NEW TRIAL .............................................................. 22

        A.  The District Court's Unlawful Instructions Invited the Jury to Conflate Intent to Artistically Reference with Intent to Confuse ............................................................................. 22

        B.  The District Court's Exclusion of Dr. Gopnik and Admission of Dr. Kominers Requires Reversal ................................. 23

        C.  None of Hermès' Other Arguments Has Merit ................................. 25

1. *Dastar* Independently Requires the Dismissal of Hermès' Lanham Act Claims ........................................................25

2. *Rogers* Required the Dismissal of All Hermes' Claims, Including its Cybersquatting Claim ...............................28

CONCLUSION ..............................................................................................29

CERTIFICATE OF COMPLIANCE .......................................................30

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anderson News, L.L.C. v. American Media, Inc.*,
   899 F.3d 87 (2d Cir. 2018) ..................................................................24

*Bolger v. Youngs Drug Prods. Corp.*,
   463 U.S. 60 (1983) ............................................................................22

*Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.*,
   419 F.3d 576 (7th Cir. 2005) ............................................................27

*Church & Dwight Co., Inc. v. SPD Swiss Precision
   Diagnostics, GmBH*,
   843 F.3d 48 (2d Cir. 2016) ...............................................................13

*Cohen v. G&M Realty L.P.*,
   Case No. 13-CV-05612 (FB), Case No. 15-CV-3230 (FB) (RLM),
   2017 WL1208416 (E.D.N.Y. Mar. 31, 2017) ...................................24

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
   539 U.S. 23 (2003) ...........................................................5, 26, 27, 29

*Dupree v. Younger*,
   598 U.S. 729 (2023) ...........................................................................5

*Hamilton Int'l Ltd. v. Vortic LLC*,
   13 F.4th 264 (2d Cir. 2021) ................................................................5

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*,
   599 U.S. 140 (2023) ...................................................................*passim*

*Lamparello v. Falwell*,
   420 F.3d 309 (4th Cir. 2005) ............................................................28

*Louis Vuitton Mallatier S.A. v. Warner Bros. Entertainment Inc.*,
   868 F. Supp. 2d 172 (S.D.N.Y. 2012) ................................................9

*Mattel Inc. v. Walking Mountain Productions*,
   353 F.3d 792 (9th Cir. 2003) .......................................................8, 21

*Mattel v. MCA Records,*
   296 F.3d 894 (9th Cir. 2002) ...................................................................7, 9, 10

*Parker v. Sony Pictures Ent., Inc.,*
   260 F.3d 100 (2d Cir. 2001) ................................................................14

*Phoenix Entm't Partners, LLC v. Rumsey,*
   829 F.3d 817 (7th Cir. 2016) ..........................................................26, 27

*Phoenix Entm't Partners v. J-V Successors, Inc.,*
   305 F. Supp. 3d 540 (S.D.N.Y. 2018) .......................................................27

*Pulse Entm't Corp. v. David,*
   No. CV 14-4732 (C.D. Cal. Sept. 17, 2014) .................................................27

*Rogers v. Grimaldi,*
   875 F.2d 994 (2d Cir. 1989) .......................................................*passim*

*Twin Peaks Prods., Inc. v. Publ. Int'l, Ltd.,*
   996 F.2d 1366 (2d Cir. 1993) ...............................................................12

*U.S. Patent and Trademark Office v. Booking.com B. V.,*
   591 U.S. ---, 140 S.Ct. 2298 (2020) .......................................................11

*U.S. v. Arthur,*
   51 F.4th 560 (5th Cir. 2022) ...............................................................23

*Univ. of Ala. Bd. of Trustees v. New Life Art, Inc.,*
   683 F. 3d 1266 (11th Cir. 2012) .........................................................8, 9, 21

*Vans, Inc. v. MSCHF Product Studio, Inc.,*
   88 F.4th 125 (2d Cir. 2023) ................................................................9

*Williams v. UMG Recordings, Inc.,*
   281 F. Supp. 2d 1177 (C.D. Cal. 2003) .....................................................27

**Statutes**

15 U.S.C. § 1125(d)(1)(A)(i) ..................................................................28

iv

**Other Authorities**

First Amendment to the U.S. Constitution ......................................................*passim*

1 McCarthy on Trademarks and Unfair Competition § 7:17.50 (5th ed.) ...............11

www.hamiltonmusical.com ......................................................................................11

www.starwars.com .................................................................................................10

**INTRODUCTION**

Appellant Mason Rothschild's opening brief showed that the district court was correct in ruling *three times*—at the motion-to-dismiss, summary-judgment, and trial stages—that *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), controls in this case. Rothschild's *MetaBirkins* are two-dimensional *artworks* depicting fanciful, furry Birkin handbags on pedestals:



A1079

Rothschild at all times identified himself as the *MetaBirkins'* creator, using "MetaBirkins" as the artworks' title, not as a trademark identifying the source of any products or services.

And yet, despite recognizing repeatedly that *Rogers* governs, the district court failed to apply *Rogers*' two-part objective test—which should have required dismissal on the pleadings—and instead substituted a subjective, intent-based test

that has no support under *Rogers* or the First Amendment, and that is flatly inconsistent with the Supreme Court's recognition that *Rogers* "offers an escape from the likelihood-of-confusion inquiry and a *shortcut to dismissal*." *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 157 (2023) ("*VIP*") (emphasis added).[1]

Appellees Hermès International and Hermès of Paris, Inc. ("Hermès") attempt to evade the district court's critical legal error by asserting that the district court's erroneous pre-trial decisions are not reviewable on appeal. Hermès Br. 31. But the court's denial of Rothschild's pre-trial motions was purely *legal* error: the court misapplied *Rogers* both by using an incorrect, intent-based test, and by requiring application of the *Polaroid* factors. Those legal errors are reviewed *de novo* by this Court and require reversal.

The allegations in Hermès' own complaint showed that the *MetaBirkins* title is artistically relevant to the artworks—that title describes the artworks' content, just as *Ginger and Fred* described the content of the movie in *Rogers*. 875 F.2d at 1001. And Hermès made no allegation that Rothschild used Hermès' "Birkin" mark or trade dress in any way that explicitly misleads as to the source or content

---

[1] In its summary judgment opinion, the district court got *Rogers* exactly backwards: "One may expect, then, that in most cases involving *Rogers* there would remain genuine issues of material fact with respect to many or most of its factors, even at the late stages of litigation." SPA43-SPA44.

of the artworks. In fact, Hermès' complaint showed that Rothschild explicitly and consistently identified *himself* as the source of the *MetaBirkins* artworks.[2]

This Court should reverse the district court's motion-to-dismiss decision and enter judgment for Rothschild. Alternatively, the Court should apply the correct *Rogers* legal standard and reverse either the denial of Rothschild's summary judgment motion or the denial of Rothschild's motion for judgment as a matter of law. The undisputed evidence produced in discovery and at trial only confirmed that the *MetaBirkins* are artworks, that Rothschild never used Hermès' marks as a source-identifier, and that Rothschild's use was artistically relevant to the artworks and did not explicitly mislead as to source.

Finally, even if this Court determines that Hermès' claims should not have been dismissed as a matter of law, other errors require reversal and remand for a new trial. First, the jury instructions were incorrectly ordered, framing the First

---

[2] This Court need not parse through the voluminous record in order to determine that reversal is warranted; this case should have failed at inception. But it is worth noting how badly Hermès misrepresents the record—even to the point of making material factual assertions that *its own trial witnesses admitted were not true*. *See* 6-7, *infra*. Hermès' brief is littered with material misrepresentations of the record that Rothschild can hardly begin to address in this reply, but that are revealed if one looks at the surrounding transcript pages or cited exhibits. One example is Hermès' assertion that a "customer … wrote to Rothschild asking 'Where is my purse? You guys scammed me.'" Hermès Br. 12. But the quote is actually from a *social media* comment, and there is *no evidence* that the commenter was a *MetaBirkins* customer rather than a random internet troll. In fact, Hermès adduced no evidence that a single *MetaBirkins* purchaser was confused. *See* A496-A497.

3

Amendment as a defense or excuse, rather than as a threshold limitation to Lanham Act liability. Second, the instructions invited the jury to conflate Rothchild's lawful intent to artistically *reference* the Birkin bag with an intent to *confuse* consumers—a reversible legal error whether or not *Rogers* applies.

The harm caused by the erroneous jury instruction was compounded by the wrongful exclusion of Dr. Blake Gopnik's testimony. Gopnik is a prominent and well-respected art historian and art critic who would have provided crucial context about the practices of artists like Andy Warhol, Rothschild, and others who engage with well-known brands in their art. That context would have permitted the jury to distinguish between intent to *artistically reference* a brand and intent to confuse consumers.

Gopnik's exclusion is especially egregious because the district court allowed Dr. Scott Kominers, an economist without any qualifications to opine on art or the practices of artists, to testify that *MetaBirkins* got their value from an association with Hermès, and not buyers' appreciation for the artworks themselves. But Kominers admitted that he was unable to investigate whether *MetaBirkins* were valuable because of their qualities as art, and that he could not exclude that possibility. A318-A321. Without Gopnik's testimony, the jury could only have been confused by Kominers' baseless testimony.

Finally, *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), independently requires dismissal of Hermès' claims. In *Dastar* the Supreme Court unambiguously held that only misrepresentations of the origin of *tangible goods* are actionable under the Lanham Act. Hermès' fundamental complaint is that consumers will be confused about the origin of Rothschild's intangible artworks; *Dastar* bars that claim.

## ARGUMENT

### I. *ROGERS* REQUIRES REVERSAL AS A MATTER OF LAW

This Court should reverse the judgment and rule, as a matter of law, that the First Amendment protects Rothschild's artistic expression.

Hermès says that *Dupree v. Younger*, 598 U.S. 729 (2023), blocks this Court from reviewing the district court's erroneous motion-to-dismiss and summary-judgment decisions—and then Hermès entirely ignores Rothschild's arguments about them. Hermès Br. 31. But Hermès' supposed strongpoint here is as secure as the Maginot Line. *Dupree* simply explained that denial of summary judgment on sufficiency-of-the-evidence grounds is not reviewable on appeal post-trial. 598 U.S. at 731. As Rothschild's opening brief made clear, and as explained below, Rothschild challenges the district court's interpretation of *Rogers* in its motion-to-dismiss and summary-judgment opinions. That is a purely legal issue reviewed by this Court *de novo*. *Id.* at 734-35; *see Hamilton Int'l Ltd. v. Vortic LLC*, 13 F.4th

264, 271 (2d Cir. 2021). Proper application of *Rogers* required dismissal of

Hermès' claims at every stage of this case.

### A. *MetaBirkins* Are Artworks.

It has been clear from the outset that Rothschild's *MetaBirkins* are

artworks—two-dimensional images depicting cartoonish, fur-covered Birkin bags

on pedestals. A95. The district court recognized this fact at the motion-to-dismiss

stage, explaining, "[W]hile Hermes calls what Rothschild sells 'digital handbags,'

they do not dispute that what Rothschild sells are digital images of (faux fur, not

leather) Birkin bags, and not virtually wearable Birkin bags." SPA3 n.1. The

undisputed evidence subsequently adduced only confirmed this. A465; A455-

A456.

Hermès nonetheless still attempts to recast *MetaBirkins* as "fake Birkin bags

for the digital world" (Hermès Br. 5), falsely suggesting that *MetaBirkins* are

usable as handbags in digital environments. Hermès Br. 10 (referring to

Rothschild's private communication stating *MetaBirkins* were "metaverse ready

cause fully 3D" and noting that Rothschild "retweeted a message touting

MetaBirkins NFTs as a way to 'Dress[] those metaverse avatars.'"). But Hermès'

own technical expert admitted at trial that the *MetaBirkins* are "flat, two-

dimensional digital pictures" that "are not virtual wearables in the sense that some

fashion companies are putting out virtual wearables in virtue worlds" and "are not

6

useable as handbags in the sense that 3D digital objects are usable in certain digital environments…" A465.

Accordingly, there has never been a genuine dispute at any stage in this case over whether the *MetaBirkins* are artworks.

### B.   "MetaBirkins" Was Used as a Title, Not a Trademark.

"MetaBirkins" is the title of Rothschild's artworks. A233; A295. Rothschild used *MetaBirkins* in the same way the title *Ginger and Fred* used Ginger Rogers' name: to describe the contents of the artworks. A188-A189; A295; SPA31; *Rogers*, 875 F.2d at 1001; *Mattel v. MCA Records*, 296 F.3d 894, 901 (9th Cir. 2002) (*Rogers* applies to use of "Barbie" mark in the title *Barbie Girl* for song that "pokes fun at Barbie and the values that Aqua contends she represents"). There were no allegations that Rothschild used the *MetaBirkins* title without reference to the *MetaBirkins* artworks.[3] A35-A93; *see VIP,* 599 U.S. at 157 (distinguishing a film using a Louis Vuitton suitcase to convey something about a character from a competing luggage manufacturer using an "ever-so-slightly modified logo to make inroads in the suitcase market").

---

[3] Hermès falsely asserts that Rothschild used the *MetaBirkins* title to "promote related goods and services." Hermès Br. 28. There was no allegation or evidence suggesting that Rothschild did anything other than offer his collectors additional art or identify himself as the creator of *MetaBirkins* when promoting his other NFT art projects, which bore different titles. *See*, *e.g.*, A35-A93; A1164-A1165.

Rothschild thus did not use the *MetaBirkins* title as a trademark any more than the producers of *Ginger and Fred* used that title as a trademark for Fellini's film—as the district court correctly ruled at the motion-to-dismiss stage:

> Hermès tries to distinguish *Rogers* on the ground that Rothschild uses the 'MetaBirkins' mark as a source identifier on social media to promote and advertise the NFTs, as a URL, and to identify a website, arguing that the First Amendment does not protect unauthorized use of another's mark as a source identifier. But this does little to distinguish *Rogers* or explain why the *Rogers* test does not apply here. Using the title of the artwork for social media and online accounts dedicated to selling the artwork is just like the marketing and advertising approved in *Rogers*.

SPA11-SPA12 (citing *Rogers*, 875 F.2d at 998). *See also* A295; A302-A304.

The Supreme Court in *VIP* approved the result in *Rogers* and specifically distinguished VIP's admitted trademark use to indicate the source of consumer products from Fellini's use of Ginger Rogers' name to title his film. 599 U.S. at 153-55.[4] And the Court endorsed application of *Rogers* in several analogous cases:

> Over the decades, the lower courts adopting *Rogers* have confined it to similar cases, in which a trademark is used not to designate a work's source, but solely to perform some other expressive function. So, for example, when the toymaker Mattel sued a band over the song "Barbie Girl"— with lyrics including "Life in plastic, it's fantastic"

---

[4] Hermès wrongly argues that *Rogers* can be distinguished because the movie was a single work, whereas *MetaBirkins* is the title for multiple artworks. Hermès Br. 26. But the *Rogers* rule does not depend on how many artworks are at issue. *See Mattel Inc. v. Walking Mountain Productions*, 353 F.3d 792 (9th Cir. 2003) (rejecting under *Rogers* claim against "Food Chain Barbie" series of photographs); *Univ. of Ala. Bd. of Trustees v. New Life Art, Inc*., 683 F. 3d 1266, 1279 (11th Cir. 2012) (rejecting claims based on artist's depiction of university's football uniforms in series of artworks).

and "I'm a blond bimbo girl, in a fantasy world"—the Ninth Circuit applied *Rogers*. [*Mattel,* 296 F. 3d at 901]. That was because, the court reasoned, the band's use of the Barbie name was "not [as] a source identifier": The use did not "speak[] to [the song's] origin." *Id.* at 900, 902; *see id.,* at 902 (a consumer would no more think that the song was "produced by Mattel" than would, "upon hearing Janis Joplin croon 'Oh Lord, won't you buy me a Mercedes Benz?,' . . . suspect that she and the carmaker had entered into a joint venture"). Similarly, the Eleventh Circuit dismissed a suit under *Rogers* when a sports artist depicted the Crimson Tide's trademarked football uniforms solely to "memorialize" a notable event in "football history." [*Univ. of Ala.*, 683 F. 3d at 1279]. And when Louis Vuitton sued because a character in the film The Hangover: Part II described his luggage as a "Louis Vuitton" (though pronouncing it *Lewis*), a district court dismissed the complaint under *Rogers*. *See Louis Vuitton Mallatier S.A. v. Warner Bros. Entertainment Inc.*, 868 F. Supp. 2d 172 (S.D.N.Y. 2012).

*VIP*, 599 at 154. Like the defendants in the cases cited by the Supreme Court—and unlike in *VIP*—Rothschild used Hermès' marks in the title and content of his artworks, not to sell other products. *See Vans, Inc. v. MSCHF Product Studio, Inc.*, 88 F.4th 125, 136 (2d Cir. 2023) ("Courts in this Circuit have been careful to apply *Rogers* to a limited category of expressive works, including the title and cover of books and magazines, and the use of trademarked products in feature films and video games.") (internal citations omitted).[5]

---

[5] Notably, the International Trademark Association (INTA) filed an amicus brief in *Vans*, arguing that *Rogers* should apply to expressive works whenever "the expression cannot be removed from the product without it ceasing to be the same product, *i.e.*, that the expression is conceptually inseparable from the product." 22-1006, Doc. 49 at 1-2, 4. Even by INTA's standard, *Rogers* protects *MetaBirkins*: if you separate the expression from the *MetaBirkins* NFTs, all that is left is

9

Those cases also make clear that titles of artworks are *by definition* not trademark uses. *See Mattel*, 296 F.3d at 901 ("We expect a title to describe the underlying work, not to identify the producer, and Barbie Girl does just that."). As this Court recognized in *Rogers*, "[t]itles, like the artistic works they identify, are of a hybrid nature, combining artistic expression and commercial promotion," and "the expressive element of titles requires more protection than the labeling of ordinary commercial products." 875 F.2d at 998. As Dr. Gopnik explained at the summary-judgment stage:

> …the *MetaBirkins* title is "properly minimal, in the heart of the tradition of titles in fine art: It merely designates the content of Mr. Rothschild's images (that they are a riff on the famous Birkin bag) and adds a further and apposite descriptor ("meta") to make that designation more accurate, while also helping to distinguish his artworks from the commercial product commonly known as a Birkin.

A295. Treating the promotional use of artistically relevant titles as trademark use would be inconsistent with *Rogers*' purpose as a "shortcut to dismissal" for accused expressive works. *VIP*, 599 U.S. at 157.

In its summary judgment opinion, the district court confirmed that *Rogers* governs (SPA38-SPA39) and did so again at trial: Instruction 14 of the court's jury instructions included an instruction on *Rogers*—albeit one that misapplied it—and

---

meaningless computer code. A432-A433; SPA34 ("Individuals do not purchase NFTs to own a 'digital deed' divorced from any other asset…").

the court belatedly ruled in Rothschild's favor on the artistic-relevance prong. SPA109.[6] There has never been a genuine dispute over whether Rothschild was using *MetaBirkins* as a trademark to indicate the source of goods—he was not, and thus the district court correctly recognized prior to and at trial that *Rogers* governs.

### C.    The "MetaBirkins" Title Obviously Is Artistically Relevant.

While the district court ultimately ruled during trial that the *MetaBirkins* title was artistically relevant as a matter of law (SPA109), that was obvious from the outset. The complaint showed on its face that the title described the content of the artworks; this was confirmed by undisputed evidence at summary judgment. A94; A188-A189; A295. But the district court made a legal error in replacing *Rogers'* objective inquiry into artistic relevance with a *subjective* inquiry into whether Rothschild chose the subject of his artworks because he *intended* to make an artistic comment or instead intended to profit by leveraging the power of Hermès' mark. SPA14; SPA41. That kind of subjective, fact-intensive inquiry—which the

---

[6] Hermès wrongly argues that Rothschild's use of the *MetaBirkins* title in a domain name to promote his art was a trademark use. Hermès Br. 29. Not all domain names are trademarks; some simply describe what can be found on the website. *See U.S. Patent and Trademark Office v. Booking.com B. V.*, 591 U.S. ---, 140 S.Ct. 2298, 2307 (2020) (rejecting a per se rule classifying a domain name as a trademark or not a trademark); 1 McCarthy on Trademarks and Unfair Competition § 7:17.50 (5th ed.) ("Out of the millions of domain names, probably only a small percentage also play the role of a trademark or service mark."). Expressive works are commonly marketed at domain names corresponding to their titles. *See, e.g.*, www.hamiltonmusical.com; www.starwars.com.

district court misapplied to the artistic relevance analysis on both dispositive motions—is inconsistent with *Rogers*. *Rogers* does not depend on intent, but on facts that can be determined by looking at the use on its face, as this Court did in *Rogers*. If it were otherwise, *Rogers* could not serve as a "shortcut to dismissal." *VIP*, 599 U.S. at 157.

### D. Hermès Failed to Allege or Show Any Explicitly Misleading Use.

The district court likewise erred in ruling that the "explicitly misleading" prong of *Rogers* did not require dismissal on the pleadings. The court wrongly ruled that the *Polaroid* factors had to be applied to determine whether Rothschild's use was explicitly misleading, citing *Twin Peaks Prods., Inc. v. Publ. Int'l, Ltd.,* 996 F.2d 1366 (2d Cir. 1993). SPA14-SPA16; SPA42-SPA44. But *Twin Peaks* did not abrogate *Rogers*; it held only that the *Polaroid* factors must be applied in the specific context of title-versus-title disputes, which is not this case.[7] 996 F.2d at 1379. *Rogers* obviously cannot serve as an "*escape from the likelihood-of-confusion inquiry* and a shortcut to dismissal"—as the Supreme Court said it does—if it generally requires consideration of the *Polaroid* factors. 599 U.S. at 157 (emphasis added).

The district court also said in denying Rothschild's motion to dismiss that even if the *Polaroid* factors were set aside, Hermès had adequately alleged explicit

---

[7] *Rogers* explicitly carved out title-versus-title disputes. 875 F.2d at 999 n.5.

misleadingness. SPA17-SPA18. But the court cited only two allegations, which unambiguously showed the *opposite* on the face of the complaint. *Id*.; Rothschild Br. 41-42. The cited allegations and exhibits do not plausibly show any *explicitly* misleading statement, if "explicitly" is to have any meaning.[8] And neither the district court nor Hermès could point to any other allegation of explicitly misleading use—only that some people might mistakenly *infer* that Hermès authorized or endorsed the project.

This case thus should have ended before it began—or at the latest at summary judgment, where the undisputed evidence showed that Rothschild prominently and consistently identified himself as the source of *MetaBirkins* and actively sought to correct mistaken press reports, and Hermès could point to no instance in which Rothschild told anyone that *MetaBirkins* came from Hermès. *See* Rothschild Br. 11-16, 18-19; A496. Indeed, the undisputed evidence showed that Rothschild was in direct, daily contact with his audience of would-be *MetaBirkins* collectors on the Discord chat platform, where Rothschild made clear that he was the creator of *MetaBirkins*. A534-A535; A547; A571-572; A1386-A1388. Moreover, every initial *MetaBirkins* purchaser had to be put on a "whitelist" by Rothschild. A537-A538.

---

[8] "A message can only be literally false if it is unambiguous." *Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 65 (2d Cir. 2016).

## II. THE JURY INSTRUCTIONS WERE ERROR REQUIRING REVERSAL

The district court's jury instructions, prejudicially mis-ordered and based on the court's intent-based misapplication of *Rogers*, were structurally and substantively incorrect, prejudicial to Rothschild, and require reversal and remand.

Regarding the ordering, Hermès responds that Rothschild provides "*no authority for the proposition that a *Rogers* instruction must precede the standard trademark claim instructions.*" Hermès Br. 32.[9] That is incorrect: the authority is *Rogers* itself, which granted summary judgment to defendant without consideration of the *Polaroid* factors and *despite the existence of actual confusion and survey evidence of likely confusion*. 875 F.2d at 1001-02. *Rogers* is designed to be an escape from a likelihood-of-confusion inquiry altogether (*VIP*, 599 U.S. at 157), and for that reason, *Rogers* cases almost never go to juries. Rothschild Br. 33-34. But as a matter of logic, if a *Rogers* case does go to a jury, the *Rogers* test must precede consideration of the *Polaroid* factors. It is no "escape" if the likelihood-of-confusion inquiry is required first.

Hermès derides as "frivolous" Rothschild's objection to the district court's decision to frame the First Amendment as an excuse for bad behavior to be used

---

[9] Hermès incorrectly asserts that the Court here applies an abuse-of-discretion standard. Rothschild's argument is that the instructions, taken as a whole, misled the jury as to the proper legal standard—which is reviewed *de novo*. *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 106–07 (2d Cir. 2001); Rothschild Br. 60.

only *after* determining, under the *Polaroid* factors, whether Rothschild was an infringer. Hermès Br. 32. At the charging conference, however, the district court agreed with Rothschild's counsel that the concerns raised regarding the ordering of the instructions were not frivolous but rather merited serious consideration:

> MR. SPRIGMAN: [T]he first thing, in our view, the jury should consider is the First Amendment, which is first for a reason. And I think that here, your Honor, what would be helpful is to move instruction 14 to 11….
>
> THE COURT: …I understand the argument. In fact, when I was drafting this, I kind of went back and forth in my own mind as to which should come first….
>
> MR. SPRIGMAN: Your Honor, I'm going to be frank. I disagree because whether you phrase it as a defense or not, the way this is structured, it looks to the jury like an excuse. If they find Mr. Rothschild liable under the standards that should not, by any means, apply in this case, but apply in a case where it's a handbag versus a handbag instead of a handbag versus a picture of a handbag --
>
> THE COURT: Well, I hear that, and I don't think that's a frivolous argument.

SPA71-SPA73.

Hermès argues that the jury instructions were "far more favorable to Rothschild than the law required" because they required the jury to find both that Rothschild's use of the marks "was subjectively intended to mislead and objectively misleading." Hermès Br. 34. This is incorrect. An intent inquiry is not mandated by, and is contrary to the "shortcut" purpose of, *Rogers*. And *Rogers* requires Hermès to show an *explicitly* misleading use—*i.e.*, one that is

unambiguously misleading *on its face* due to an overt claim—not an "objectively" misleading use, a term found nowhere in *Rogers* and not defined by Hermès. If by "objectively" misleading Hermès refers to a use that might cause a reasonable person to draw an incorrect inference, *Rogers* rejected liability on that ground. Specifically, *Rogers* expressly rejected survey evidence indicating that the use of Ginger Rogers' name had confused consumers, holding that "that risk of misunderstanding, not engendered by any *overt claim* in the title, is so outweighed by the interests in artistic expression as to preclude application of the Lanham Act." 875 F.2d at 1001 (emphasis added).

The record shows that it is not true that "the jury had no trouble concluding" under the court's instructions that "Hermès proved that Rothschild *intentionally* misled consumers into believing that Hermès was backing [his] products." Hermès Br. 22. Hermès, like the district court, ignores the fact that the jury deliberated over three days, sending a note on the second day indicating that it might be hung as to whether Rothschild had waived his First Amendment rights—and that it was engaging in logrolling in light of a prior note it had sent. Rothschild Br. 21-22. Had the district court correctly applied *Rogers* and subjected Hermès' claims to the demanding criterion of explicit misleadingness, Rothschild would not have been subjected to oppressive discovery—including disclosure of thousands of pages of his private communications that Hermès has mischaracterized to smear him

throughout the case—and a costly trial. That Rothschild ended up here shows that the court's instruction was less protective of Rothschild's First Amendment rights than *Rogers* required it to be. Indeed, Rothschild's trial to inquire into whether he had a legitimate artistic motive or a profit motive—if not corrected by this Court—will have a profound chilling effect on artistic freedom.

Finally, Hermès argues that Rothschild waived his right to object to the substance of Instruction No. 14. Hermès Br. 33. That argument too is baseless. Rothschild proposed an instruction and Special Verdict Form implementing *Rogers'* objective test. A375-A377; A409-A411. During argument on Rothschild's judgment-as-a-matter-of-law motion, immediately before the charging conference, the Court asked Rothschild's counsel, "Is the [*Rogers*] test objective or subjective?" Counsel unequivocally replied, "The test is objective, your Honor. It is objective." A752. At the Friday charging conference, Rothschild's counsel argued that the instruction should apply an objective test by explaining to the jury that "[a]n explicitly misleading use is not a use which may merely confuse consumers who draw mistaken inference of connection to Hermès. An explicitly misleading use must suggest that connection directly and unambiguously." SPA100.

Nonetheless, the court stated the following Monday that "over the weekend,

the more I thought that on the facts of this case the real question is the defendant's intent." SPA107. The court also directed that it was limiting discussion of the instruction to the language seeking to effectuate the court's focus on intent and expressly stated: "Everything else will remain exactly as it is, and *all objections thereto are preserved*." SPA108 (emphasis added). In response, counsel stated that "the instruction [gave] the jury words they [could] use to actually apply the principle" regarding intent that the district court had decided, despite Rothschild's objections, would be the basis for the instruction. SPA110. In doing so, however, counsel already had made clear that he was "arguing within the framework that [the court had] set down" (SPA98-SPA99), and later stated that Rothschild's agreement with the particular language of the instruction was only within that framework, whether it be "right or wrong" as a matter of law. A842-A843. Counsel concluded his argument by emphasizing, again, that the explicitly misleading prong of *Rogers* had nothing to do with intent but rather with explicit misstatements. A854-A855.

In sum, Rothschild repeatedly objected to the substance of Instruction 14. Hermès is trying to turn the proper respect Rothchild's counsel showed for the limitations the district court itself had placed on argument over its final instructions into an argument for waiver.

18

## III. THE DISTRICT COURT ERRED IN REJECTING ROTHSCHILD'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Subsequent to both the district court's summary judgment ruling and the trial in this case, the Supreme Court decided *VIP*. The Court made clear that the district court's view of *Rogers* as requiring a "fact-intensive, context-specific analysis presented on a full record" was incorrect. SPA42-SPA44. The *Rogers* test, the *VIP* Court stated, "offers an escape from the likelihood-of-confusion inquiry and a shortcut to dismissal." 599 U.S. at 157.

In his post-trial motion for judgment as a matter of law, Rothschild again urged the district court to correctly apply *Rogers*. Instead, the district court backtracked on the one thing it had gotten right all along: it found, in conflict with what it had said three times before and without any supporting reasoning, that use as a trademark, which removes the protections of *Rogers*, "is precisely what the defendant, with his 'MetaBirkins' NFTs and 'MetaBirkins' website, did here." SPA147.

The district court did not explain its about-face. If the court was saying that Rothschild's use of the *MetaBirkins* title for his artworks and in the promotion of those artworks was a trademark use, that would be squarely at odds with *Rogers*— a fact the court recognized when it ruled at the motion-to-dismiss stage that "[u]sing the title of the artwork for social media and online accounts dedicated to selling the artwork is just like the marketing and advertising approved in *Rogers*."

19

SPA11-SPA12 (citing *Rogers*, 875 F.2d at 998). *See also* A295 (Gopnik explaining traditionally artistic use of *MetaBirkins* title).

If the court was saying that Rothschild made a trademark use because the jury had found a likelihood of confusion, that also would be inconsistent with *Rogers*. Ginger Rogers presented evidence of confusion among the film's publicists as well as a survey that purported to show that 38% of respondents mistakenly believed Rogers was associated with the film and 14% believed she was directly involved in making the film. 875 F.2d at 1001 n.8. This Court nonetheless rejected Rogers' claim, because the title "contain[ed] no explicit indication that Rogers endorsed the film or had a role in producing it." *Id*. (emphasis added).

Obviously, the evidence of confusion in *Rogers* did not lead this Court to conclude that promoting a film using the *Ginger and Fred* title was a trademark use. Nor would deducing trademark use from confusion comport with the Supreme Court's characterization in *VIP* of the *Rogers* test as "an escape from the likelihood-of-confusion inquiry and a shortcut to dismissal." 599 U.S. at 157. *Rogers* can be neither of those if a trial on the likelihood of consumer confusion is required to establish or to disprove the predicate—whether the defendant has made a trademark use—that determines whether the "shortcut" applies.

More broadly, the question of trademark use, as the *VIP* Court understands it, makes no sense unless it is determined objectively by the character of the use itself. *See Univ. of Ala*, 683 F.3d at 1276 (rejecting survey evidence of confusion because "the First Amendment interests in artistic expression so clearly outweigh whatever consumer confusion that might exist on these facts that we must necessarily conclude that there has been no violation of the Lanham Act with respect to the paintings, prints, and calendars."); *Walking Mountain*, 353 F.3d at 801 ("Use of surveys in assessing parody would allow majorities to determine the parodic nature of a work and possibly silence artistic creativity."). That is exactly what the district court did when it originally held that Rothschild was not making a trademark use: it looked at the objective characteristics of the uses at issue. With respect to the artworks' title, Rothschild's use is the same as the use in *Rogers*, and if that use is a trademark use then *Rogers* means nothing. With respect to the use of the title on the website and social media accounts to promote the artwork, as the district court noted, "[u]sing the title of the artwork for social media and online accounts dedicated to selling the artwork is just like the marketing and advertising approved in Rogers." SPA11-SPA12 (citing *Rogers*, 875 F.2d at 998).

It would be absurd to give artists wide latitude to use a mark to title a work but then punish them when they use the title to promote the work in a way that is not explicitly misleading. At a minimum, for *Rogers* to perform its intended

function as a "shortcut to dismissal," there must be a bright line rule that applies the First Amendment protections of *Rogers* to any use to title or to promote a creative work that is *purely speech*, as opposed to a consumer product that may have some expressive elements.[10] *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67 n. 14 (1983) (noting that general commercial speech rules may not apply to advertising for fully protected noncommercial speech).

## IV. EVEN IF *ROGERS* DID NOT APPLY, THE DISTRICT COURT'S ERRORS OF LAW REQUIRE REVERSAL AND REMAND FOR A NEW TRIAL

### A. The District Court's Unlawful Instructions Invited the Jury to Conflate Intent to Artistically Reference with Intent to Confuse.

The failure of the jury instructions to distinguish between intent to reference and intent to confuse is a pervasive problem in this case and requires reversal. Rothschild Br. 62-66. Hermès offers no response to this argument. Moreover, the exclusion of Gopnik exacerbated the prejudicial effect of the district court's error by depriving the jury of the testimony they needed to avoid mistaking Rothschild's lawful intent to artistically reference for an intent to confuse—and to avoid being misled by Dr. Kominers into deciding that *MetaBirkins* were not art because of "utilities." *See* A158; A292-A294.

---

[10] Indeed, even if Rothschild's promotional efforts were deemed outside the scope of *Rogers*, reversal would still be required, with a new trial focused on the promotional efforts and not the artwork itself, and with any potential remedy limited to protect the artwork.

**B.** **The District Court's Exclusion of Dr. Gopnik and Admission of Dr. Kominers Requires Reversal.**

Although the district court has substantial discretion in excluding expert testimony, courts have not hesitated to find abuse of discretion when a court ignores the professional standards of the expert's own field. *U.S. v. Arthur*, 51 F.4th 560, 573-74 (5th Cir. 2022). Hermès wants art expertise to be judged by mechanistic standards, but it has to be judged by the standards of the relevant profession. *Id.* Dr. Gopnik's methodology is of the type ordinarily used by experts in his field: it is a comparative method based on extensive study and experience of artists, the art market, art history, and art criticism. *See* A154-A166 (comparing *MetaBirkins* to other notable artworks in history).

Hermès tries to invent a distinction (Hermès Br. 44) between comparison, which courts have repeatedly upheld as an appropriate methodology for artistic evaluations (Rothschild Br. 68-70), and Gopnik's consideration of artistic *context*. But Gopnik explained how he uses context to identify business art in multiple situations, which is the essence of his qualitative, comparative method. A293-A299 (explaining, based on comparison with historical practice among business artists across decades and in contemporary art, that Rothschild's aggressive promotional activities, desire to make money with his art, and use of "utilities" were all consistent with his stated artistic intentions). Gopnik's opinion was based on his understanding of the artistic conventions Rothschild worked within, how

23

Rothschild's work engages the artistic genres of conceptual art and business art, and how other recognized artists within those genres have approached their work in ways similar to what Rothschild did. *See id*.; A154-A166.

Hermès also tries to defend Gopnik's exclusion on the basis that he truthfully testified that there is no consensus among art critics and historians about the definition of art. Hermès Br. 44. That too is insufficient. "[I]conoclastic and disputable aesthetic theories" of properly qualified experts are, because of the qualitative and judgment-based nature of art criticism, suited for a jury to weigh. *See, e.g., Cohen v. G&M Realty L.P*., Case No. 13-CV-05612 (FB) (RLM), Case No. 15-CV-3230 (FB) (RLM), 2017 WL1208416, at *2-3 (E.D.N.Y. Mar. 31, 2017); *cf. Anderson News, L.L.C. v. American Media, Inc.*, 899 F.3d 87, 112-13 (2d Cir. 2018) (trial court abused its discretion in excluding portions of expert report providing additional relevant market information).

Even if the Court found it proper to exclude Gopnik from testifying about comparisons to other artists or the role of intent in art, he should have been allowed to testify to rebut Kominers' assertion that "utilities" changed the nature of the *MetaBirkins* NFTs so as to remove them from the realm of protected artistic expression. Hermès Br. 16-17. Gopnik was well qualified to opine on the fact that artists have provided "utilities" such as exclusive access to their collectors and patrons for decades (or centuries). A158; A293-A294. Without Gopnik's

24

testimony, the jury was left at sea to determine alone if Rothchild's conduct was consistent with his stated intentions, and it was invited to determine that *MetaBirkins* were not really art. Gopnik's exclusion was not harmless, as illustrated by the jury foreperson Jane Kramer's misguided public statements following trial. Rothschild Br. 26, 56.

Moreover, the exclusion of Gopnik's testimony was especially harmful in light of the district court's decision to allow Hermès' economics expert, Kominers, to testify over Rothschild's objection. At his deposition, Kominers admitted that he could not say what is or is not art (A322-A324), and that he did not take into account the art market as a "factor" in his "empirical" analysis of the prices fetched by Rothschild's *MetaBirkins* because he "couldn't figure out a way to do it that would be robust." A318-A321. The district court abused its discretion in allowing Kominers to testify, especially after excluding Gopnik. Had Gopnik been allowed to testify, he would have made clear that the "utilities" that Kominers identified to insinuate that *MetaBirkins* was not protected artistic expression in fact are "perfectly normal aspects of traditional artistic practices." A293-A294.

### C.   None of Hermès' Other Arguments Has Merit.

#### 1.   *Dastar* Independently Requires the Dismissal of Hermès' Lanham Act Claims.

Hermès' fundamental complaint is that consumers will believe Rothschild's *MetaBirkins* artworks are sponsored by or affiliated with Hermès. That claim is

25

barred by *Dastar*, which unambiguously holds that only misrepresentations of the origin of tangible goods are actionable under the Lanham Act. 539 U.S. at 37 (holding that "origin of goods" as used in the Lanham Act refers only to "the producer of the *tangible* goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods") (emphasis added).[11]

Hermès' assertion that "no court has held that the Act is inapplicable to intangible goods" (Hermès Br. 43) reflects its fundamental misunderstanding of *Dastar*: there are no cases that say *Dastar* rules out claims against "intangible goods," because that phrase is an oxymoron. *Dastar* defines "origin of goods" for purposes of the Lanham Act to mean origin of *tangible* goods. Cases like *Phoenix Entm't Partners, LLC v. Rumsey* focus on whether there was plausible confusion regarding the source of a tangible good because those courts understand that *only confusion relating to the source of a tangible good is relevant*. 829 F.3d 817 (7th Cir. 2016). Those cases rejected the plaintiffs' claims because the plaintiffs did not allege plausible confusion regarding the source of that tangible good. *See id*. at 829 (any confusion was "not about the source of the tangible good sold in the

---

[11] *Dastar* is based on an interpretation of the text of the Lanham Act, none of which was added after the *Dastar* decision. Hermès' textual arguments are flatly inconsistent with the interpretation given by the Supreme Court. Hermès Br. 43. To the extent those arguments relate to the Lanham Act's references to "services," Hermès never alleged here that Rothschild offered any services under the *MetaBirkins* title.

marketplace"); *see also Phoenix Entm't Partners v. J-V Successors, Inc.*, 305 F.
Supp. 3d 540 (S.D.N.Y. 2018) (adopting the reasoning of *Rumsey*); *Pulse Entm't
Corp. v. David*, No. CV 14-4732 (C.D. Cal. Sept. 17, 2014) Dkt. #19 (*Dastar*
barred false designation of origin claim based on explicit misattribution to wrong
creator; hologram was creative work, like a cartoon).[12]

Hermès' citations to *Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.*, 419 F.3d
576 (7th Cir. 2005), and *Williams v. UMG Recordings, Inc.*, 281 F. Supp. 2d 1177
(C.D. Cal. 2003), are even more puzzling. *Bretford* rejected a claim that copying
the design of the legs of a table misrepresented the source of the physical table; it
did so because the court concluded the plaintiff was really complaining about
misrepresentation of the origin of the *intangible design*—a claim that is barred by
*Dastar* because, like here, it does not relate to the origin of a tangible good. 419
F.3d at 580–81. *Williams* likewise rejected the plaintiff's claim for failure to credit
because his claim was not directed to the origin of a tangible good. 281 F. Supp. 2d
at 1184. Those cases support Rothschild, not Hermès.

---

[12] Hermès' use of Professor McCarthy's statement that "there is no doubt that
trademark law and the Lanham Act are fully operative in cyberspace" completely
misunderstands *Dastar*. Hermès Br. 42. Many uses in "cyberspace" can plausibly
indicate the origin of tangible goods. Hermès sells physical scarves online; online
uses of the Hermès mark could cause confusion about the origin of tangible goods
like physical scarves. Uses that do not cause confusion about the origin of tangible
goods, however, are not actionable under *Dastar*, in cyberspace or elsewhere.

To the extent that they have physical existence, Hermès does not allege that the NFTs and associated URLs identifying where the *MetaBirkins* images are hosted misrepresent their own physical origin. Hermès' allegation that the *MetaBirkins* name will cause confusion about "the origin, sponsorship, association or approval by Hermès of the METABIRKINS NFTs" is simply sleight of hand: any such alleged confusion comes only from the content and title of the intangible *MetaBirkins* artworks, or references to the name of that art project.

### 2. *Rogers* Required the Dismissal of All Hermes' Claims, Including its Cybersquatting Claim.

*Rogers* also bars Hermès' cybersquatting claim. Cybersquatting requires use of a domain name with a bad-faith intent to profit. 15 U.S.C. § 1125(d)(1)(A)(i). Rothschild's use of a domain name that is the title of his art project cannot be bad faith because that title is artistically relevant and not explicitly misleading, and therefore protected by the First Amendment. When *Rogers* applies to insulate the title of artwork, it must also apply to bar claims based on use of that title as a domain name for a site about the artwork. *See Lamparello v. Falwell*, 420 F.3d 309, 316 (4th Cir. 2005) ("a court must evaluate an allegedly infringing domain name in conjunction with the content of the website identified by the domain name"); *id*. at 316 n.4 ("[I]t has long been established that even when alleged infringers use the very marks at issue in titles, courts look to the underlying content to determine whether the titles create a likelihood of confusion as to source").

28

## CONCLUSION

The Court should properly apply *Rogers* and/or *Dastar*, reverse the judgment, enter judgment for Rothschild, and vacate the order of permanent injunction. In the alternative, the Court should remand for a new trial consistent with the First Amendment's protection of artistic freedom.


Dated: February 23, 2024                    Respectfully Submitted,

                                             /s/ *Rhett O. Millsaps II*
                                            Rhett O. Millsaps II
                                            Christopher J. Sprigman
                                            Mark P. McKenna (*admission pending*)
                                            Rebecca Tushnet
                                            Mark A. Lemley
                                            LEX LUMINA PLLC
                                            745 Fifth Avenue, Suite 500
                                            New York, NY 10151
                                            (646) 898-2055

                                            *Attorneys for Defendant-Appellant*
                                            *Mason Rothschild*

## <u>CERTIFICATE OF COMPLIANCE WITH FRAP 32(A)<br>AND LOCAL RULE 32.1</u>

1.    This brief complies with the word limitation of Local Rule 32.1(a)(4)(B) because this brief contains 6,994 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14 point font.


Dated:   February 23, 2024

/s/ <i>Rhett O. Millsaps II</i><br>
Rhett O. Millsaps II<br>
Lex Lumina PLLC<br>
745 Fifth Avenue, Suite 500<br>
New York, NY 10151<br>
646-898-2055
