IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

| HERMÈS INTERNATIONAL and | ) | |
|---|---|---|
| HERMÈS OF PRIS, INC., | ) | |
| | ) | |
| Plaintiffs/Appellees, | ) | |
| | ) | |
| v. | ) | Case No. 23-1081 |
| | ) | |
| MASON ROTHSCHILD | ) | |
| | ) | |
| Defendant/Appellant. | ) | |

**THE CHAMBER OF DIGITAL COMMERCE'S REPLY IN SUPPORT
OF MOTION FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF**

Pursuant to Federal Rule of Civil Procedure 27(1)(3), The Chamber of Digital Commerce (the "Chamber") submits this Reply to Defendant-Appellant Mason Rothschild (Appellant)'s Opposition to the Chamber's Motion for Leave to File an *Amicus* Brief.

### I. INTRODUCTION

Appellant refused to consent to the filing of the Chamber's *amicus* brief because a single board of advisors member was confused as to the content of the planned brief and took it upon himself to incorrectly advise Appellant that the Chamber was purportedly filing a brief on Appellant's behalf. Dkt. 104-10. However, the Chamber was clear when it sought permission to file its brief that the Chamber was supporting Appellee's case. Dtk. 104-8. There was no conflict, and

1

no reliance that Appellant can reasonably point to that would merit denying of Chamber's request leave to file its brief.

Appellant's Opposition also relies on substantive arguments that have no merit in denying leave. Neither the actions of a single member of an industry-wide organization nor Appellant's disagreement with the contents of the Chamber's proposed *amicus* briefing are valid reasons to deny the Chamber's request for leave to file its briefing.

## II. STANDARD

The right to submit a friend of the court, or *amicus curae*, brief by an interested member of society is a bedrock of the American adversarial system of justice. It is "based on the same fundamental premise as our First Amendment—a firm belief in the robust and fearless exchange of ideas as the best mechanism for uncovering the truth." *Lefebure v. D'Aquilla*, 15 F.4th 670, 674 (5th Cir. 2021). It is under this understanding, that courts routinely hold that they should "grant motions for leave to file amicus briefs unless it is obvious that the proposed briefs do not meet Rule 29's criteria as broadly interpreted." *Neonatology Associates, P.A. v. C.I.R.*, 293 F.3d 128, 132–133 (3d Cir. 2002) (Alito, J., in chambers).

## III. THE CONTENT OF THE CHAMBER'S BRIEF IS APPROPRIATE FOR *AMICUS CURIAE* SUBMISSION

The Chamber, as the world's largest blockchain trade association representing more than 200 diverse members globally, has an undeniable interest in the outcome

of this case regarding the applicability of trademark laws to the new and expanding class of blockchain authenticated digital goods. Here, the Chamber seeks to provide the Court with a broader background on the cryptographic technologies underlying these digital goods, and the ways in which the goods are bought, sold, and used. Matters which were not fully addressed in the briefs of the parties.

The Chamber advocates for the Court to adopt clear legal rules, based on the practical realities of the technologies at issue. Dkt. 79, pg. 12-13. Trademark protections in this emerging industry are imperative to ensure consumer expectations are protected, confusion is minimized, and so brand value can be built and preserved. *Id*. at pg. 22-26. Due to the unique feature of blockchain authenticated digital goods, failure to apply a likelihood of confusion analysis in trademark disputes involving digital goods will cause significant harm to both brand owners and consumers. *Id*.

Appellant primarily takes issue with what Appellant believes to be "incorrect, material factual assertions" contained in the Chamber's proposed brief. Dkt. 104-1, pg. 2. However, using the word count feature of Microsoft Word, cites or references to the underlying case's record make up approximately 407 words (less than 10%) of the 4,056 words in the proposed brief. Appellant's complaints are with how the facts are interpreted by the Chamber, and not the facts themselves.[1] The Chamber's

---

[1] For additional facts which form the basis for the Chamber's interpretations, *See, e.g.,* Pl.Trial.Ex.244 (Appellant interview quote stating he feels he has accomplished "bringing [the Birkin bag] into the digital world with this

3

brief is not meant to relitigate facts from the underlying case; the parties to the case can do that. The Chamber submitted its proposed *amicus* brief instead to provide the Court with an understanding of the interests of the digital goods industry in general, and ensure those interests are represented in this important case. The underlying case is merely an exemplar the wide-ranging industry issues and the Chamber's brief is meant to highlight and propose a framework for analyzing the trademark issues in this unique and specialized industry.

Appellant's umbrage with the less than 10% of the Chamber's brief is not a valid reason to reject the Chamber's *amicus* filing. *See Neonatology Associates*, 293 F.3d at 133 ("If an amicus brief that turns out to be unhelpful is filed, the merits panel, after studying the case, will often be able to make that determination without much trouble and can then simply disregard the amicus brief. On the other hand, if a good brief is rejected, the merits panel will be deprived of a resource that might

introduction of the metaverse."); ECF157(639) (Appellee's expert Dr. Kominers explaining that Appellant encouraged consumers to "[c]hange your profile photo to your favorite #MetaBirkin."); ECF153(284–85) (Appellant testifying at trial that "I believe it was a day or two after where the [final NFT images] were revealed."); ECF153(429) (Appellant stating that the "luxury product" being referred to in Appellant's text was the MetaBirkin NFT); Pl.Trial.Ex.308(27) (Appellant's investor stating "I feel like people would buy the fact that we're reserving a private marketplace for [MetaBirkins NFTs] since it's a premium good unlike the rest of the stuff."). Even Appellant's cited exhibit in opposition is confusing, as it is a message exchange between Appellant and individuals who invested in Appellant discussing how they could make the MetaBirkin NFTs into wearables in various Metaverses. *See* Dkt. 104-4.

have been of assistance."). The Court can make its own determinations as to the record before it.

## IV. MATHEW ROSZAK HAD NO INVOLVEMENT WITH THE CHAMBER'S *AMICUS* BRIEF

Appellant also claims that the email exchange between Appellant and one of the Chamber's advisory board participants, Mathew Roszack, warrants exclusion of the Chamber's brief. Even if Appellant had included case law to support this as a reason for exclusion (which Appellant does not), this is nonsensical for a variety of reasons.

First, as the email exchange included as an exhibit by Appellant shows, Mr. Roszack did not even know which side the Chamber was planning to file in support of in this matter. Dkt. 104-10; *see also* Decl. of Cody Carbone, Ex. A. This lack of even basic background on the Chamber's planned *amicus* belies any claim that Mr. Roszack was in any way involved with the *amicus* briefing process.

Second, as stated in the email exchange between the Chamber's Chief Policy Officer, Cody Carbone, and counsel for Appellant, Mr. Roszack had absolutely no involvement with the preparation of the Chamber's *amicus*. Dkt. 104-8. Mr. Roszack did not participate in any workstream meetings regarding the briefing. Carbone Decl. ¶ 6. He did not provide any comments or feedback to the briefing. *Id*. He did not even know who the briefing was in support of. Dkt. 104-10. He is a representative of Bloq, which is one of the over 200 blockchain industry participants

that make up the Chamber's membership. Carbone Decl. ¶ 5. He is also not an employee of the Chamber and certainly is not the Chamber's "chairman" despite what he may claim in private communications or what is included on a "WikiMarkets" page which the Chamber does not own or control. Dkt. 104-2, ¶ 9 (attorney for Appellant citing to "WikiMarkets" website for support as to Mr. Rozack's position at the Chamber, which is demonstrably false). In sum, Mr. Roszack's only connection to the Chamber's proposed *amicus* brief is that he is one of the almost 2,000 individuals on the Chamber's email distribution list who gets notified when the Chamber is considering submitting an *amicus* in a case regarding the blockchain industry, such as the instant case.

Third, this is an *amicus* brief in an appellate matter. Appellant's "strategies and resources" in litigating this matter are a matter of public record, fully provided in the underlying case and through Appellant's brief on appeal. It is unclear why counsel for Appellant is stating, under oath, that he waived attorney-client privilege over conversations regarding "detailed questions about the case and Mr. Rothschild's strategies and resources for defending it" with an unrelated third-party. But it has absolutely no bearing on the Chamber's *amicus*, which was prepared without the participation, input, or involvement of Mr. Roszack.

## V. CONCLUSION

For the reasons stated above, the Chamber respectfully request this Court grant the Chamber's Motion to Submit an *Amicus* Brief in this matter, and allow the Chamber to file the same.

Respectfully submitted,

*/s/ Jonathan E. Schmalfeld*
Jonathan E. Schmalfeld
Polsinelli P.C.
100 S. Fourth Street, Suite 100
St. Louis, MO 63102-1825
(314) 622-6621

Daniel P. Mullarkey
Polsinelli P.C.
1401 Eye ("I") Street, N.W., Suite 800
Washington, DC 20005
(202) 626-8305

*Attorneys for Amicus Curiae The Chamber of Digital Commerce*